**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

**DAWN TOWNLEY,**
    Plaintiff,

v.

**CITY COUNCIL for the CITY OF HILLSDALE,**
**CITY OF HILLSDALE BOARD OF PUBLIC UTILITIES,**
**MICHAEL BARBER, and**
**DAVID MACKIE,**
    Defendants.

Case No.:  16-cv-1316

Hon. GORDON J. QUIST

Mag. Judge RAY KENT

___

Collin H. Nyeholt (P74132)
FIXEL AND NYEHOLT, PLLC
Attorney for the Plaintiff
4084 Okemos Road, Ste. B
Okemos, MI  48864
(517) 332-3390
(517) 853-0434 (Fax)
cnyeholt@fixellawoffices.com

Audrey J. Forbush (P41744)
PLUNKETT COONEY
Attorney for the Defendants
Plaza One Financial Center
111 E. Court Street – Suite 1B
Flint, MI 48502
(810) 342-7014
(810) 232-3159 (Fax)
aforbush@plunkettcooney.com

## JOINT STATUS REPORT

A Rule 16 Scheduling Conference is scheduled for the 2nd day of March, 2017.  Appearing for the parties will be:

Collin Nyeholt for the Plaintiffs
Audrey Forbush for the Defendants

    1. **Jurisdiction**:  The basis for the court's jurisdiction is:

Federal question, pursuant to 28 USC § 1331, with pendant state claims pursuant to 28 USC § 1367.

2. **Jury or Non-jury:**  The case is to be tried before a jury.

3. **Judicial Availability:**  The parties do not agree to have a United States Magistrate Judge conduct any and all further proceedings in the case, including trial, and the entry of final judgment.

4. **Geographic Transfer:**  Plaintiff does not believe that geographic transfer is warranted in this case.

5. **Statement of the Case:**

Plaintiff's Statement:  This is a whistleblower claim with a discrimination twist.  Dawn Townley was employed by the City of Hillsdale's Board of Public Utilities ("BPU") as its Finance Controller.  In the course of her employment, she was asked by Defendant Mackie, the City Manager, to investigate embezzlement by former employees of the BPU.  She came to learn that Defendant Barber, the BPU's *current* Director of Public Works, was also involved in activity that she identified as embezzlement.  She told him so.  She began to audit him.  And, she discussed this audit with the City's auditing firm, the City attorney, and various other City officials.  In response, Barber almost immediately began harassing Townley at work.  At one point, he told another BPU employee (within Townley and the auditors' earshot) that he could "push Dawn until she quits" and said "hopefully, she'll just leave so we can get rid of her."  In targeting Townley for harassment because of her investigation of his embezzlement, Barber violated both state and federal[1] whistleblower protection law.  In specifically setting out to cause Townley stress, Barber committed Intentional Infliction of Emotional Distress in violation of Michigan law.

The particular pretext Barber used to "push" Townley was also unlawful in its own right.  Barber targeted Townley for discipline for "sexual harassment" based on shop talk type conversations she was engaged in, while tolerating similar behavior from the male employees.  On at least one occasion, Townley was disciplined for a supposedly inappropriate conversation one of the male employees initiated with her.  The male who initiated the conversation was not similarly disciplined.  By treating Townley, a female, in a

---

[1] The City and the BPU, through arrangements with the Michigan Finance Authority ("MFA"), was required to regularly report the BPU's financial status as a condition of its offering municipal bonds to the public.  The SEC does not directly regulate municipal bond issuers, but instead regulates the MFA as a secondary seller of municipal bonds.  The MFA, in conformance with SEC regulation 17 CFR 240.15c2-12, is in turn required to enter into a private agreement with the BPU that requires it to submit to regular financial reporting as a condition of offering municipal bonds.  The SEC can, and periodically does, exercise jurisdiction over municipal bond issuers by virtue of Rule 15c2-12 agreements they have entered.  *EG: In re Berrien,* File No. 3-17450 (SEC 8/24/16) (SEC cease and desist proceedings against County of Berrien.)  The embezzlement Townley investigated would have resulted in misstatements on BPU's financial statements.  As such, her embezzlement audit was activity protected by the SEC Act, 18 USC § 1514A.  As recognized by the Sixth Circuit, the 2010 Dodd-Frank Act did away with 1514A's administrative exhaustion requirement and allows parties like Townley to file a 1514A retaliation claim *directly* in federal court.  *Rhinehimer v. US Bancorp*, 787 F.3d 797, 804-5 (6th Cir. 2015).

materially different manner than the males at BPU, Barber committed unlawful gender discrimination.

Barber's harassment did what he intended it to do: Townley suffered significant and severe emotional distress because of his actions. She was, for the first time in her life, diagnosed with bipolar disorder as a result of the stress Barber put her under. After one particularly bad incident with Barber, she had a nervous breakdown and was later involuntarily committed for treatment. She told City Manager David Mackie, and others, about her bipolar diagnosis. When he fired her, Mackie told her "in your mental state, you are no good to us or to anyone," referring to her mental state and her diagnosis. In considering Townley's bipolar disorder in terminating her, Mackie committed disability discrimination.

Approximately two weeks before her termination, Townley had pressed Barber and Mackie to comply with the FLSA with respect to breaks for salaried employees in the BPU. They complied, but made Townley aware they were unhappy doing so. To the extent this action on her part played into their decision to terminate her, it was a violation of the FLSA's anti-retaliation provisions.

<u>Defendants' Statement:</u>   Plaintiff was terminated and her position was eliminated because she was not performing her duties, was not completing tasks, was insubordinate, was inappropriate in her behavior, failed to supervise her staff and/or be accessible to them, made threats and failed to come to work on a regular basis. In fact, Plaintiff would frequently leave her office for hours at a time on a daily basis. Her work performance was exceedingly poor and her behavior, both sexual and otherwise, was inappropriate in the workplace and made her coworkers very uncomfortable.

Plaintiff's allegation that she is a "whistleblower" is false – she did not uncover the embezzlement of "millions of dollars" as claimed in her complaint; no one has been charged with embezzlement and the analysts from Plante & Moran will confirm the falsity of her claims. While Plaintiff was *asked* to look for information related to prior credit card usage, no evidence was uncovered that established any impropriety by Mr. Barber, the current Director of the BPU, and she reported none. Moreover, the only credit card abuse that has been confirmed is that committed by Plaintiff herself – when she charged personal medical treatment to the City's credit card!

Mr. Barber had no knowledge that Plaintiff was purportedly "auditing" him and denies the allegations she has made referencing statements made by him. Rather, Mr. Barber could not get Plaintiff to perform the essential functions of her job – she was unable to provide him with month end financial statements for the BPU and was not paying bills on time. Her tasks were not completed on a timely basis and she was frequently absent from work without explanation. She was not "disciplined" unfairly. However, when she and a male coworker entered into a discussion about whether Plaintiff's breasts were "real or fake" (a conversation she had with numerous male employees), Mr. Barber spoke with both employees separately and verbally reprimanded them. Mr. Barber took no overt action to "force" Plaintiff out. He simply required her to perform the duties of her important position. When she made mistakes (such as poorly kept meeting minutes), he corrected those mistakes. Plaintiff would

overreact and take it as personal as opposed to a supervisor appropriately pointing out the errors of his subordinate.

It quickly became apparent to all dealing with Plaintiff that she was not qualified for her position. The Defendants had no notice of Plaintiff's alleged bipolar diagnosis and have never received any documentation regarding same from any medical provider. Her termination was unrelated to any alleged medical or psychiatric condition.

Plaintiff's position has been eliminated and in keeping with the original plan when Plaintiff was hired, the BPU financials have been transferred to the accounting department at City Hall.

6. **Pendent State Claims:** This case does involve pendent state claims.

7. **Joinder of Parties and Amendment of Pleadings**: The parties expect to file all motions for joinder of parties to this action and to file all motions to amend the pleadings by June 8, 2017.

8. **Disclosures and Exchanges:**

    **(i)** Fed.R.Civ.P. 26(a)(1) disclosures shall be made by plaintiff by April 8, 2017 and by defendant by April 8, 2017.
    **(ii)** The plaintiff expects to be able to furnish the names of plaintiff's expert witnesses to the defendant by May 8, 2017. The defendant expects to be able to furnish the names of the defendant's expert witnesses to plaintiff by June 8, 2017. In this case, it would be advisable to exchange written expert witness reports as contemplated by Fed.R.Civ.P. 26(a)(2). Plaintiff will provide expert reports by June 8, 2017. Defendant will provide expert reports by July 8, 2017.
    **(iii)** The parties are unable to agree on voluntary production at this time.

9. **Discovery:** The parties believe that all discovery proceedings can be completed by September 8, 2017. The parties recommend the following discovery plan: The parties will conduct discovery on all subjects permissible within the scope of the Federal Rules, including but not limited to Plaintiff's employment, the embezzlement investigation, her mental status, and her termination. The parties recommend application of the presumptive limitations of discovery and to deposition numbers and length.

10. **Disclosure or Discovery of Electronically Stored Information:** The parties have discussed the production of electronically stored information and suggest that such information be handled as follows:

    Plaintiff anticipates significant discovery as to emails, memos, reports, and other electronic documents related to this dispute. Plaintiff will accept such documents in .pdf format. Plaintiff also anticipates text messages and telephonic messages to be exchanged in this process. Plaintiff proposes that text messages be produced in screen shot format in

4

a .pdf or similar file.  And, Plaintiff proposes that any recordings be produced in .wav file or similar.  Defendants agree with this proposal as it is anticipated that the majority of text messages and recordings are in the possession of Plaintiff at this time.  Plaintiff has failed to return her City-owned cell phone despite repeated requests for same and Defendants request that this Honorable Court order her to do so.  Plaintiff has agreed to return the cell phone subject to Defense counsel's agreement to preserve relevant evidence contained thereon and, as noted through several correspondence with Defendants' counsel, is coordinating the return through her attorney the undersigned.

11. **Assertion of Claims of Privilege or Work-Product Immunity After Production:** The parties will agree to follow the procedures contained in Fed.R.Civ.Pr. 26(b)(5)(B) in the event of any inadvertent production.  The parties acknowledge that inadvertent production does not constitute waiver of privilege, and do not anticipate that an order pursuant to Fed.R.Ev. 502 is needed at this time.

12. **Motions**:  The parties acknowledge that  W.D. Mich. LCivR 7.1(d) requires the moving party to ascertain whether the motion will be opposed.  All motions shall affirmatively state the efforts of the moving party to comply with the obligation created by Rule 7.1(d).

    The following dispositive motions are contemplated by each party:
    From the plaintiff, none.  Defendants anticipate filing a Motion for Summary Judgment as to all claims by Plaintiff.

13. **Alternative Dispute Resolution**:  The parties recommend that this case be submitted to the following method(s) of alternative dispute resolution:

    Plaintiff recommends that the case be submitted to case evaluation after the conclusion of discovery, followed by a magistrate's settlement conference.  Defendants do not agree to binding state court case evaluation but would agree to facilitation.

14. **Length of Trial**:  Counsel estimate that trial will last approximately ____ full days total, allocated as follows:  _3_ days for plaintiff's case, _2__ days for defendant's case, _0_ days for other parties.

15. **Prospects of Settlement:**  The status of settlement negotiations is:

Plaintiff's statement:  Plaintiff was unable to discuss settlement prior to suit due to the short statute of limitations (90 days) on a Michigan Whistleblower's claim.  Plaintiff's counsel and Defendant's discussed settlement in particular, and Plaintiff submitted a formal demand, on February 20, 2017.  Plaintiff anticipates, in light of the parties' relative positions, that discovery will be necessary before meaningful discussions as to settlement may occur.

Defendants' statement:   A settlement offer was made to Plaintiff on February 21, 2017.

5

16. **Electronic Document Filing System:** The parties acknowledge that they have read, and understood, LCivR 5.7(a) and will appropriately use the ECF system, or effect paper service on any *pro se parties* (if any).

17. **Other:**

The parties do not foresee any characteristics of this case that may warrant extended discovery, accelerated disposition by motion, or other factors relevant.

                                                      Respectfully Submitted,

Dated: 2/21/17                                      /s/ Collin H. Nyeholt
                                                          Collin H. Nyeholt
                                                          Attorney for the Plaintiff

                                                          /s/ *Audrey J. Forbush*
                                                          Audrey J. Forbush (P41744)
                                                          Attorney for Defendants